900 F.2d 256
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alberto ARAGON, Defendant-Appellant.
 No. 89-5103.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 9, 1990.
Decided: April 5, 1990.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Joseph C. Howard, District Judge. (CR-88-348-JH)
 Joseph Alfred De Paul, De Paul and Lewis, P.A., College Park, Md., David P. Sutton, Washington, D.C., for appellants.
 Joseph L. Evans, Assistant United States Attorney, Baltimore, Md. (Argued), for appellee; Breckinridge L. Willcox, United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Alberto Aragon ("Aragon") was convicted by a jury on charges of conspiring to defraud the United States by selling counterfeit Immigration and Naturalization Service ("INS") Form I-94 work authorization papers to aliens in violation of 18 U.S.C. Sec. 371, and of possessing and transferring these fraudulent documents in violation of 18 U.S.C. Secs. 2 (aiding and abetting), 1028(a)(2) (fraud in connection with identification documents), and 1546(a) (fraud and misuse of immigration documents). On appeal, Aragon argues that the district court improperly excluded, as hearsay or cumulative evidence, certain testimony and documents corroborating his contention that he had a good faith belief in the legality of his actions. Specifically, Aragon asserts that the proffered evidence: (1) was essential to his defense because it showed that he lacked the requisite criminal intent; (2) constituted "verbal acts" which are admissible as an exclusion to the hearsay rule; and (3) would show that he acted in good faith as an agent of Ariel Palacios ("Palacios"), an individual holding himself out as an attorney providing legal assistance to immigrants. In contrast, the government maintains that: (1) the evidence was not relevant; (2) even if the evidence was relevant, it comprised inadmissible hearsay; and (3) even if the evidence was not hearsay, the district court's decision to exclude the evidence constituted harmless error. We believe that the trial court's exclusion of the proffered evidence constituted no more than harmless error, and therefore affirm the judgment below.
 
 I.
 
 2
 The facts adduced at trial showed that Aragon had assisted immigrants in obtaining illegal INS work authorization documents. Aliens seeking a Form I-94 work permit provided Aragon with a passport, or other identification, together with a cash deposit. Several days later the desired papers would be ready. The total fee which Aragon charged for these permits was approximately $700 to $750. An INS Special Agent testified that the work permits appeared authentic to the ordinary observer, and that their invalidity was discoverable only by conducting an INS computer search on the counterfeit documents. Each work permit had a stamp indicating that the Form I-94 had been issued by the INS in Miami, Florida. Testifying in his own defense, Aragon stated that he had known Palacios since youth, that he believed Palacios to be an attorney who handled immigration matters on behalf of immigrants, and that he was friendly with Palacios' secretary, Antonia Gonzales ("Gonzales"). Aragon also testified that Palacios had asked Aragon to assist him in providing INS work papers to immigrants. According to Aragon, Palacios assured him that, as an attorney specializing in immigration law, Palacios would have no difficulties obtaining the necessary INS documents for aliens, and that the liaison and support services performed by Aragon would be completely lawful. Pursuant to his purported arrangement with Palacios, Aragon interviewed aliens seeking work permits, completed an information form, obtained the applicant's passport or other identification, collected a cash deposit, forwarded these items to Palacios in New Jersey, distributed the work permits sent by Palacios, and collected the final payments from the applicants. For his services, Aragon testified that he received ten percent of the total amount charged by Palacios. Aragon insists that he did not know and could not have known that the INS work papers provided by Palacios were fraudulent, and that his actions were made in good faith reliance on Palacios' statements that he was a licensed immigration lawyer.
 
 
 3
 In the course of presenting his defense, Aragon sought to introduce the following evidence: (1) a handwritten and undated letter from Gonzales to Aragon setting forth instructions for the handling of INS work permit requests, and indicating that Aragon was to contact Palacios or Gonzales if he had any questions or problems; (2) the testimony of Gustavo Rivas ("Rivas"), a person active in several immigrant aid organizations, that Palacios had told him that he was a law school graduate, an attorney, and a member of the Bar, and that on the basis of this information, Rivas had referred a number of persons having immigration problems to Palacios and Aragon; and (3) the testimony of Adilia Bonilla ("Bonilla") and one other individual that Palacios had held himself out as an immigration attorney. It should be noted that the court allowed Aragon to testify that he had distributed Palacios' business cards to a number of his friends in the immigrant community. In addition, one of those business cards was introduced into evidence. The words "ATTORNEY-AT-LAW" appeared just below Palacios' name on the business card.
 
 
 4
 Following a trial on December 5-8, 1988, the jury found Aragon guilty on all counts of the indictment. Aragon's motion for a new trial was denied by the district court on January 10, 1989, and he was sentenced to a 15-month term of imprisonment on April 10, 1989. This appeal followed.
 
 II.
 
 5
 It is axiomatic that the duty of a reviewing court is to consider the trial record as a whole and to ignore errors which are harmless because there can be no such thing as a perfect, error-free trial, and the Constitution does not guarantee such a trial. United States v. Hasting, 461 U.S. 499, 508-09, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96, 105-06 (1983). This responsibility is propounded in our governing laws and rules. See 28 U.S.C. Sec. 2111 ("On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); Fed.R.Crim.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."). In Hasting, the Supreme Court indicated that an appellate court should apply the harmless error rule in all cases where the error is deemed harmless beyond a reasonable doubt. 461 U.S. at 508-10, 103 S.Ct. at 1980-81, 76 L.Ed.2d at 105-07. The essence of the harmless error rule is that a judgment may stand only when there is no reasonable possibility that the practice complained of might have contributed to the conviction. 461 U.S. at 506, 103 S.Ct. at 1979, 76 L.Ed.2d at 104. In Alston v. Garrison, 720 F.2d 812, 817 (4th Cir.1983), cert. denied, 468 U.S. 1219, 104 S.Ct. 3589, 82 L.Ed.2d 886 (1984), this court, citing Hasting, stated that the proper inquiry was whether, viewing the entire record, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty absent the allegedly harmless error. That is the question before this court.
 
 
 6
 We agree with the government's argument that "even if the trial court erred in not admitting the disputed testimony, any such error was harmless given the mass of testimony admitted on the same point." The record clearly indicates that the proffered evidence was cumulative of other admitted evidence, including: (1) Palacios' business card, which identifies Palacios as an "ATTORNEY-AT-LAW"; (2) Aragon's testimony that he distributed Palacios' business card to numerous friends in the immigrant community; (3) Aragon's testimony that he believed Palacios to be an immigration attorney, and the reasons supporting that belief; (4) the testimony of Aragon's wife to the same effect, including a description of an incident where Palacios offered to assist two immigrants with their immigration problems following their arrests for using INS work papers provided by Palacios and Aragon; (5) Aragon's testimony that he had received written instructions from Palacios regarding their working relationship; and (6) testimony by an INS Special Agent that Aragon had told him that Aragon was working for an attorney named Palacios.
 
 
 7
 As this court held in United States v. Bales, 813 F.2d 1289, 1296 (4th Cir.1987), any error in the exclusion of evidence which is merely cumulative of other admitted evidence is harmless. After examining the entire record, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty absent the allegedly harmless error. Accordingly, the judgment below is
 
 
 8
 AFFIRMED.