983 F.2d 1059
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Sharon Carol STEELE, a/k/a Sharon Burlingame, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Dennis Robert BURLINGAME, Defendant-Appellant.
 Nos. 91-5827, 91-5830.
 United States Court of Appeals,
Fourth Circuit.
 Argued: September 30, 1992
Decided: January 4, 1993
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. Samuel G. Wilson, District Judge. (CR-90-103-R)
 Argued: John Palmer Fishwick, Jr., Fishwick, Jones & Glenn, Roanoke, Virginia, for Appellant Sharon Burlingame; Deborah S. Caldwell-Bono, Roanoke, Virginia, for Appellant Dennis Burlingame.
 Joseph William Hooge Mott, Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 On Brief: Jane S. Glenn, Fishwick, Jones & Glenn, Roanoke, Virginia, for Appellant Sharon Burlingame.
 E. Montgomery Tucker, United States Attorney, Roanoke, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and BUTZNER and SPROUSE, Senior Circuit Judges.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Sharon Steele Burlingame and her husband, Dennis Burlingame, appeal their convictions for defrauding a credit union by violating 18 U.S.C. §§ 371 (conspiracy to defraud), 657 (misapplication of funds), 1014 (false applications), and 1344 (schemes to defraud). Sharon was also convicted of violating § 1006 (false book entries). The Burlingames assert that the evidence was insufficient to support the verdicts. Additionally, Dennis Burlingame disputes the district court's refusal to give jury instructions which he requested. Finding sufficient evidence and the challenge to the jury instructions meritless, we affirm. To avoid confusion, we will refer to Sharon Burlingame and Dennis Burlingame by their first names.
 
 
 2
 * Sharon was indicted for executing a scheme to defraud the General Electric Employees Recreational Association Federal Credit Union and to obtain funds from it by fraudulent pretenses and representations, false entries, and willful misapplication of funds. The indictment alleges that the unlawful scheme was the submission of false and inflated claims for working overtime. The evidence disclosed that the credit union paid $13,900 on account of these claims.
 
 
 3
 The credit union hired Sharon as a loan clerk in March 1985. Although she lacked experience and training, the directors appointed her manager in November 1985. At that time and throughout her term as manager, the business was poorly organized and sloppily run.
 
 
 4
 Sharon's claims for overtime between April 10 and November 13, 1987, when added to her regular 40-hour week, would have required her to work an average of 16.9 hours a day, 7 days a week. One of the directors who visited the credit union's office noticed that Sharon was not present, yet she claimed compensation for these occasions. Although she said that she worked overtime with two employees, they denied that this was so, except for a few hours each quarter.
 
 
 5
 In order to obtain a conviction the government had to prove that Sharon intended to defraud the credit union. See United States v. Bales, 813 F.2d 1289, 1293-94 (4th Cir. 1987). Sharon contends that the government has failed to prove intent because two directors approved her compensation and one of them signed her pay checks.
 
 
 6
 Sharon's defense did not establish lack of intent; it simply raised an issue for the jury. Her checks showed net pay. They did not disclose the funds that were deducted from her pay and credited to her accounts at the credit union. Usually the checks were in the neighborhood of $200, an amount that would not raise any suspicion. The officers who approved her compensation were volunteers. They paid scant heed to pay records and instead relied on Sharon who was in charge of the day-to-day operations of the business. Although the officers' oversight may have been careless, it does not absolve Sharon of culpability. The government can prove fraudulent intent by circumstantial evidence and inferences drawn from the facts. Bales, 813 F.2d at 1294.
 
 II
 
 7
 Sharon was also convicted of fraudulently lending money to herself, to her husband, Dennis, to Dennis's brother, Mark Burlingame, and to George Washer, her former husband's boss. Without detailing the history and circumstances of these numerous loans, it is sufficient to note that Sharon at various times made false entries, lent at below market rates, accepted insufficient or encumbered collateral, received or disbursed the proceeds of loans made to fictitious borrowers, understated monthly repayment schedules, and falsely reported or failed to report fraudulent loans to the directors.
 
 
 8
 Dennis was convicted for aiding and abetting Sharon with respect to loans made to him. He and Sharon also were convicted of making false applications and of conspiring to defraud the credit union.
 
 
 9
 To be sure, Sharon and Dennis offered explanations and justifications for their conduct. They relied in part on past practices of the credit union and its flexibility in accommodating its customers. While this evidence was relevant, it could not exonerate the defendants as a matter of law. See United States v. Celesia, 945 F.2d 756, 759 (4th Cir. 1991). The conflicts in the evidence and the inferences that reasonably could be drawn from the evidence presented questions for the jury. Viewing the evidence in the light most favorable to the government, we conclude that substantial evidence supports the verdicts. See Glasser v. United States, 315 U.S. 60, 80 (1942). At sentencing, the district court found by a preponderance of the evidence that the loss to the credit union attributable to Sharon was $175,323.55. On appeal, Sharon has not questioned this finding, other than by her denial of any wrongdoing.
 
 III
 
 10
 Dennis assigns error to the district court's refusal to give an instruction he tendered to the effect that once he introduced evidence of authority to sign his grandmother's name, the government must establish lack of authority.
 
 
 11
 The difficulty with Dennis's assignment of error is the absence of facts to justify the instruction. Dennis never signed his grandmother's name. Instead he signed the name of a fictitious person, Clara Roller, consisting of the first name of his grandmother and the family name of an aunt. He gave a fictitious address and social security number on the application. To satisfy the requirement that members of the credit union must be employed by General Electric, he certified that Clara Roller was employed by General Electric as an inspector at a salary of $2,500 per month. Based on this false information, Sharon processed a $16,000 loan for Dennis at an interest rate of 7.5%, although the credit union's rate was 11%. She authorized monthly payments of $255, in lieu of the correct rate of $524. She accepted as collateral Dennis's 1984 Corvette, which was also used as collateral on one of her loans, and she did not disclose the loan to the directors. The court fully instructed the jury on the meaning and necessity of knowledge, intent, and willfulness in the context of the crimes that the indictment alleged the defendants committed.
 
 
 12
 A refusal to give a requested theory of defense instruction is reversible error only if the requested instruction (1) was correct, (2) was not substantially covered by the court's charge to the jury, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense.
 
 
 13
 United States v. Camejo, 929 F.2d 610, 614 (11th Cir. 1991) (quotation marks and citation omitted). Tested by these criteria, the district court did not err by refusing Dennis's proffered instruction.
 
 
 14
 Upon consideration of the briefs, record, and argument, we find no merit in the other assignments of error. The judgments of the district court are affirmed.
 
 AFFIRMED