1 F.3d 1234
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Shebra JOHNSON, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Sonia M. Wilkerson, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Saundra Thomas, Defendant-Appellant.
 Nos. 93-5086, 93-5087, 93-5098.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 15, 1993.
Decided: August 17, 1993.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-92-286-A)
 Robert Stanley Powell, Powell & Colton, P.C., Alexandria, Virginia; Stewart Todd Leeth, Cohen, Gettings, Dunham & Harrison, Arlington, Virginia, for Appellants.
 Robert Andrew Spencer, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 Linda S. Chapman, Powell & Colton, P.C., Alexandria, Virginia, for Appellant Thomas;David J. Kiyonaga, Kiyonaga & Kiyonaga, Alexandria, Virginia, for Appellant Johnson.
 Kenneth E. Melson, United States Attorney, John T. Martin, Assistant United States Attorney, Office of the United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINSON, LUTTIG, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants Shebra Johnson and Saundra Thomas were convicted by a jury of accepting bribes, see 18 U.S.C.Sec. 201(b)(2), and of conspiracy, see 18 U.S.C. Sec. 371. Appellant Sonia M. Wilkerson was convicted of accepting a gratuity. See 18 U.S.C. Sec. 201(c)(1)(B). Appellants challenge their convictions on several grounds. We discern no error by the district court, and therefore affirm.
 
 I.
 
 2
 Shebra Johnson, Saundra Thomas, and Sonia Wilkerson were employed by the Immigration and Naturalization Service (INS) as clerk-typists. Their duties included producing Employment Authorization Documents (EADs) for approved alien applicants, though they had no authority to approve applicants themselves. J.A. at 44-53, 6061. During her employment, Thomas became friendly with Ivette and Norberto Escobar, who were immigration "consultants," and borrowed money from them. Id. at 81-86, 182-86. In April 1991, in response to Norberto's complaints about processing delays, Thomas agreed to make EADs for the Escobars' clients outside of the normal procedures in exchange for money paid by the Escobars. Id. at 88-89, 186-87. She did this for three weeks until she was transferred to another INS office. Id. at 90-91, 94, 187-89.
 
 
 3
 In August 1991, in response to Mr. Escobar's requests, Thomas introduced Johnson to the Escobars. Id. at 95, 190. Johnson then also agreed to issue improper EADs for the Escobars' clients, and to accept bribes to do so. Id. at 96, 191. Johnson thereafter issued EADs to the Escobars' clients, with Thomas filling in whenever Johnson was busy, until some of the Escobars' clients were caught by the INS in December 1991. Id. at 96-105, 191-95. The jury found Johnson and Thomas guilty of conspiracy and accepting bribes from Norberto Escobar.
 
 
 4
 The Government alleged a similar conspiracy among Thomas, Johnson, another clerk-typist, Agnes Monroe, and another immigration "consultant," Osvaldo Vera.[1] The jury acquitted appellants on all charges relating to Vera.
 
 
 5
 Sonia Wilkerson was also a clerk-typist employed by the INS. She was tried on only one count: accepting a gratuity from Osvaldo Vera. The government introduced evidence showing that Vera paid Wilkerson $300, after which she processed applications for his clients more quickly. Id. at 245-47. The jury convicted Wilkerson of accepting a gratuity from Osvaldo Vera.
 
 II.
 
 6
 Over defense objections, the district court admitted into evidence 11 EAD cards (Gov't Ex. 10-20), the testimony of an INS agent that the cards had been illegitimately issued, and documents supporting the agent's testimony.[2] See J.A. at 346-50. The court also admitted data cards used in making EADs that had been found in a trash can near Agnes Monroe's work station (Gov't Ex. 9), and documentation showing that these too had been improperly issued. See id. at 348-53.
 
 
 7
 Johnson and Thomas contend that the district court abused its discretion in admitting this evidence. They argue that these items were not relevant to the issue of their guilt since no evidence directly linked them to these particular cards. They further argue that the evidence was unduly prejudicial.
 
 
 8
 We cannot agree. The EADs and the evidence showing them to have been improperly issued were plainly probative of the existence of a scheme to issue fraudulent EADs-a scheme in which the Escobars implicated them. They were also probative of the ongoing conspiracy between the appellants, Agnes Monroe, and Osvaldo Vera that the government sought to prove. They were thus obviously relevant to the issue of Johnson and Thomas's guilt. We also fail to see how they were unduly prejudicial. In our view, they merely supported the government's case by corroborating the testimony of the Escobars and Vera. Especially given the "substantial deference" accorded to a district court's evidentiary rulings, we conclude that the court did not abuse its discretion in admitting this evidence. See, e.g., United States v. Russell, 971 F.2d 1098, 1104 (4th Cir. 1992), cert. denied, 113 S.Ct. 1013 (1993); United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990).
 
 III.
 A.
 
 9
 Johnson and Thomas challenge the sufficiency of the evidence underlying their convictions. They contend that their convictions cannot be sustained because no one testified to having actually received a fraudulent EAD card from them and because the witnesses who did testify against them were not believable.
 
 
 10
 Viewing the evidence in the light most favorable to the government, see, e.g., Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 113 S. Ct. 3051 (1992), we conclude that a reasonable juror could have found Johnson and Thomas guilty of conspiracy and accepting bribes. Norberto and Ivette Escobar testified that Johnson and Thomas both agreed to issue EADs outside of the normal procedures for their clients in exchange for money, and that they did so. See J.A. at 88105, 187-95. They testified as to the number of alien clients processed and the amounts of money they paid. Id. at 90, 98-102, 191, 193-94. Their testimony was corroborated by the evidence of the fraudulent EADs issued to the Escobars' clients. This evidence, viewed in the light most favorable to the government, is more than sufficient to allow a reasonable juror to have convicted Johnson and Thomas.[3]
 
 B.
 
 11
 Wilkerson contends that the evidence also was insufficient to support her conviction under 18 U.S.C. Sec. 201(c)(1)(B) for accepting a gratuity from Osvaldo Vera. She argues that the government's evidence did not establish that Vera gave her money"for or because of any official act," but only that he gave her money.[4]
 
 
 12
 At trial, Osvaldo Vera testified that he paid Wilkerson because of her position in the INS office. J.A. at 245. He further testified that his clients were processed "quicker" after he paid her. Id. at 246-47. Agnes Monroe testified that Wilkerson, showing her cash, confided in her that she "had done a few" and "put in a few" for Vera. Id. at 292-93, 295. Norberto Escobar testified that he saw Vera take 20 or 30 clients to the INS office where Wilkerson then processed EADs for them. Id. at 155. Viewing this evidence in the light most favorable to the government, we conclude that a reasonable juror could have found Wilkerson accepted money from Vera for or because of an official act, and convicted her of accepting a gratuity.
 
 IV.
 
 13
 After the trial, the United States Probation Office discovered that Agnes Monroe, one of the witnesses against Wilkerson, had failed to disclose that she had been previously convicted of welfare fraud and had been on probation when she committed the crime to which she pled guilty in this case.[5] Wilkerson then moved for a new trial under Fed. R. Crim. P. 33 based on the government's failure to disclose this impeaching information, and on the grounds of new evidence.
 
 
 14
 Ruling from the bench, the district court denied this motion. It noted that Monroe had been "pretty thoroughly impeached" at trial without the information, and concluded that the undisclosed evidence was not "material in that it would not have been likely to affect the outcome, nor would it result in a different result in a new trial." J.A. at 444-45.
 
 
 15
 Wilkerson contends that this was reversible error by the district court, and that a new trial was required under either United States v. Bagley, 473 U.S. 667 (1985), or on the basis of newly discovered evidence. We disagree. The critical requirement for granting a new trial under Bagley and on the grounds of newly discovered evidence is that the evidence in question be material, i.e., that it be reasonably likely to have altered the outcome of the trial. See Bagley, 473 U.S. at 682. See also United States v. Bales, 813 F.2d 1289, 1295 (4th Cir. 1987) (under Rule 33, the evidence "must be such ... that, on a new trial, the newly discovered evidence would probably produce an acquittal"). The district judge, who was uniquely situated to determine the likely effect of additional impeachment, here determined that the new information about Monroe's criminal history was merely cumulative impeachment that would not have altered the outcome of the trial, and was therefore not material. We find that this determination was not error, given that Monroe had already been thoroughly impeached by being shown to be a criminal co-conspirator with a plea agreement and that the testimony of other witnesses was more than enough to support Wilkerson's conviction. See, e.g., United States v. Curtis, 931 F.2d 1011, 1014 (4th Cir.), cert. denied, 112 S. Ct. 230 (1991).
 
 CONCLUSION
 
 16
 For the reasons stated herein, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 On August 20, 1992 the government indicted Johnson, Thomas, and Wilkerson, along with Agnes Monroe, another clerk-typist employed by the INS. The indictment charged Johnson and Thomas with conspiring with the Escobars, and all four with conspiring with Osvaldo Vera. The forty-five count indictment also charged Johnson and Thomas with taking bribes from Norberto Escobar, and all four with taking bribes from Osvaldo Vera. The government later dismissed the conspiracy charge against Wilkerson and reduced the single bribery charge against her to the lesser included offense of accepting a gratuity. Monroe pled guilty and testified for the Government against all three appellants
 
 
 [2]
 Six of the cards had been issued to clients of the Escobars, though there was no direct evidence as to who had issued them. Two were identified by Osvaldo Vera as ones he had received from Agnes Monroe. The remaining three were seized from illegal aliens during an INS investigation, although no direct connection between them and any of the conspirators was shown
 
 
 [3]
 Counsel for Johnson and Thomas conceded at argument that this evidence, even without the evidence of the fraudulent EADs, was sufficient to support their convictions
 
 
 [4]
 Accepting a gratuity requires that a public official
 otherwise than as provided by law for the proper discharge of official duty, directly or indirectly ... receives, accepts, or agrees to receive or accept anything of value personally for or because of any official act performed or to be performed by such official or person....
 18 U.S.C. Sec. 201(c)(1)(B) (emphasis added).
 
 
 [5]
 It is undisputed that the government did not acquire this information until after the trial was completed, and that it did not intentionally withhold this information from the defense