21 F.3d 426
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Manuel Martinez RAMOS, a/k/a Antonio Pena, a/k/a Luis
Cordero, a/k/a Antonio Jaimes-Ayala, a/k/a El
Chino, Defendant-Appellant.
 No. 93-5448.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 10, 1994.
Decided April 8, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert F. Murray, Senior District Judge. (CR-92-20-HM).
 Peter Albert McKay, Law Offices of Peter McKay, New York, NY, for appellant.
 Harvey Ellis Eisenberg, Asst. U.S. Atty., U.S. Atty's Office, Baltimore, Md, for appellee.
 On brief: Martin Novar, New York, NY, for appellant.
 Lynne A. Battaglia, U.S. Atty., U.S. Atty's Office, Baltimore, MD, for appellee.
 D.Md.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and HALL and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The question in this case is whether the district court abused its discretion by allowing a criminal defendant to personally argue a portion of his case while the remainder of the trial was handled by a court-appointed attorney. Because the record indicates that the district court acted well within its discretion, we affirm the district court's judgment.
 
 I.
 
 2
 On January 8, 1992, Gabriel Londono was arrested by federal authorities for supplying cocaine to Luis Jaureguizar, a cocaine distributor turned government informant. At that time, Londono agreed to assist the Drug Enforcement Agency with its investigation of his suppliers. Londono then set up a meeting with his suppliers, Manuel Ramos and Ramiro Calvache, at which he was to deliver to them $280,000 owing on a recent sale of cocaine. On January 13, 1992, while wearing a recording device, Londono met with Ramos and Calvache at a McDonald's in Queens, New York. At that meeting, he and his suppliers discussed transactions involving hundreds of kilograms of cocaine. At the conclusion of the meeting, Ramos and Calvache were arrested as they exited the McDonald's.
 
 
 3
 At his trial on numerous drug charges, appellant Manuel Ramos proved to be an unruly defendant. During jury selection, for example, he was removed from the courtroom after making repeated outbursts. Similarly, Ramos' inability to cooperate with a string of attorneys, both appointed and retained, resulted in his being represented by four different lawyers. On the day the trial was to commence, Ramos attempted to change to a fifth lawyer. Concerned about further delay, however, the district court denied Ramos' request for a continuance and for substitution of counsel. The court similarly refused to allow Ramos to represent himself, noting that Ramos had waived his right to do so when his behavior grew so egregious as to require his removal from the courtroom. The court therefore required Ramos to continue with his current defense counsel, an experienced attorney who had argued before the court in the past.
 
 
 4
 Despite denying pro se status to Ramos, the court did attempt to honor the defendant's expressed desire to represent himself by allowing Ramos to participate in his own defense. The court permitted Ramos to make his own opening statement and to cross-examine DEA Special Agent Virgilio Ayala. Nonetheless, Ramos' appointed counsel acted as his legal representative throughout the trial, voicing objections, making motions to the court, conducting witness examinations, and even conducting voir dire of Special Agent Ayala.
 
 II.
 
 5
 Ramos argues that the district court committed constitutional error by allowing him to participate in his defense despite the lack of a clear waiver of his right to counsel. He contends that the district court denied him his Sixth Amendment right to the effective assistance of counsel by permitting him to make the opening statement at trial and to cross-examine a prosecution witness.
 
 
 6
 This argument lacks merit. First, Ramos was indeed represented by counsel--as the record reflects, apparently effective counsel--throughout the course of the trial. Merely allowing Ramos to participate by taking on some of the responsibilities normally carried out by an attorney did not change the nature of his representation to that of a pro se litigant. Given appointed counsel's thorough participation, Ramos can be viewed, at most, as having filled the role of a co-counsel. As many courts have noted, a trial judge's decision to permit "hybrid" representation or a co-counsel structure is well within the district court's discretion, and a court is free to permit or deny such representation in accordance with the individual circumstances of the case. See United States v. Sacco, 571 F.2d 791, 793 (4th Cir.1978); see also United States v. Treff, 924 F.2d 975, 979 n. 6 (10th Cir.1991); United States v. Halbert, 640 F.2d 1000, 1009 (9th Cir.1981). In this case, it would be impossible to say that the district court abused its discretion in trying both to ensure a fair trial for Ramos and also to give effect to Ramos' personal wishes. It appears that the district court did the best it could under circumstances made trying by Ramos' courtroom demeanor.
 
 
 7
 Second, we are reluctant, as would be any court, to reward Ramos for his apparently manipulative behavior. Aware of his Sixth Amendment right to counsel, as well as his right to forego counsel, see Faretta v. California, 422 U.S. 806, 818 (1975), Ramos has attempted to "exploit this difficult constitutional area by making ambiguous self-representation claims to inject error into the record." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir.1990). Now, despite his specific requests to participate in the trial proceedings, Ramos seizes upon the court's accommodation of those requests as the basis for appeal. The lack of merit in this course should be apparent.
 
 III.
 
 8
 Appellant also challenges the district court's refusal to grant a new trial based on the alleged perjury of a prosecution witness, Luis Jaureguizar. Ramos contends that, while on the witness stand, Jaureguizar purposely misstated the potential reduction in his sentence resulting from his cooperation with the government. Ramos argues that the perjurious nature of Jaureguizar's testimony could not be determined until after the trial, however, when Jaureguizar acknowledged that he actually expected a greater reduction in his sentence. Ramos tries once again to frame his challenge in constitutional terms, claiming that Jaureguizar's false statements deprived him of both a fair trial and effective cross-examination.
 
 
 9
 Despite appellant's characterization of his claim, however, the real issue here is whether a new trial is warranted on the basis of newly discovered evidence concerning Jaureguizar's beliefs at the time of trial. This circuit has clearly stated the requirements for granting a new trial in such circumstances:
 
 
 10
 (a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.
 
 
 11
 United States v. Bales, 813 F.2d 1289, 1295 (4th Cir.1987) (quoting Mills v. United States, 281 F.2d 736, 738 (4th Cir.1960)). A new trial is not warranted in this case because neither the third nor fifth prongs of this circuit's test can be satisfied.
 
 
 12
 The evidence fails to satisfy the third requirement--that it not be merely cumulative or impeaching--because its impact is simply to impeach Jaureguizar's other testimony. The new evidence put forward by Ramos also fails to satisfy the fifth requirement stated in Bales, i.e., that the newly discovered evidence would probably produce an acquittal. Even if the jury were to discount Jaureguizar's testimony in its entirety, it would still be faced with overwhelming evidence of Ramos' guilt, including a tape recording of the McDonald's meeting and the thorough testimony of Gabriel Londono. Furthermore, Jaureguizar's testimony did not implicate Ramos in any drug dealing activities; in fact, Jaureguizar indicated that he did not know who Londono's suppliers were. As a result, new evidence concerning Jaureguizar's truthfulness on the stand would not be likely to produce acquittal, and thus is not sufficient to justify a new trial. See Bales, 813 F.2d at 1289; see also United States v. Williams, 415 F.2d 232, 233 (4th Cir.1969).
 
 IV.
 
 13
 For the foregoing reasons, the judgment of the district court is
 
 
 14
 AFFIRMED.