27 F.3d 564
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Titus CHATTMAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Titus CHATTMAN, Defendant-Appellant.
 Nos. 93-5860, 93-5902.
 United States Court of Appeals, Fourth Circuit.
 Argued May 13, 1994.
Decided June 8, 1994.
 
 Appeals from the United States District Court for the District of South Carolina, at Columbia. Joseph F. Anderson, Jr., District Judge. (CR-93-8)
 Argued: Gregory Poole Harris, Columbia, S.C., for appellant.
 Eric William Ruschky, Asst. U.S. Atty., Columbia, S.C., for appellee.
 On Brief: J. Preston Strom, Jr., U.S. Atty., Columbia, S.C., for appellee.
 D.S.C.
 AFFIRMED.
 Before RUSSELL and HAMILTON, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Titus Chattman was convicted by a jury of distribution of crack cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). The district court denied Chattman's motion for a new trial and, at sentencing, enhanced appellant's sentence for obstruction of justice under U.S.S.G. Sec. 3C1.1. Chattman appeals these actions by the district court. We reject Chattman's arguments and affirm the judgment and sentence below in all respects.
 
 I.
 
 2
 The government's primary witness at trial was John Parris, an undercover agent with the United States Army Criminal Investigation Command Drug Suppression Team at Fort Jackson, South Carolina. Parris testified that, on March 20, 1992, he, accompanied by a confidential informant, met at a local Applebee's restaurant with Titus Chattman and another individual who introduced himself as "Terrence". During this meeting, Parris and Chattman discussed the possibility that Parris might purchase crack cocaine from Chattman in the future. Chattman instructed the informant to give Parris Chattman's pager number so that Parris could contact him.
 
 
 3
 On March 25, 1992, Parris telephoned Chattman's pager number. Chattman then telephoned Parris and told him that "he was going to purchase a supply of crack cocaine from an individual for $1,000 and then he would get back with [Parris] later on that evening." J.A. 12. Chattman, however, failed to contact Parris that evening as he had promised. A subsequent page by Parris of Chattman went unreturned.
 
 
 4
 On April 1, 1992, Parris again paged Chattman. When Chattman returned Parris' call, he agreed to meet Parris outside a Burger King located on Fort Jackson and to sell Parris some crack cocaine. With a surveillance team in place, Chattman drove himself and another individual to the Burger King. The passenger introduced himself to Parris as "Darrell". Chattman instructed Parris to follow them, in his car, to another location to obtain the crack cocaine. Chattman and Darrell drove, with Parris following, some two miles to a parking lot adjacent to a running track located on Fort Jackson. Darrell got out of the car, whereupon Parris exited his car and got into the car driven by Chattman, taking the front passenger seat previously occupied by Darrell.
 
 
 5
 Darrell walked some 25 meters in front of the car to an area where there were a lot of leaves. He picked something up and returned to the vehicle, sitting in the middle of the back seat, behind Chattman and Parris. Darrell then handed a small clear plastic bag containing what appeared to Parris to be a piece of crack cocaine to Chattman, who examined it and then handed it back to Darrell, instructing Darrell to give it to Parris. Parris took the package and inspected the crack cocaine. Chattman informed him that it would cost $350. Parris then gave Chattman $350 in government funds to pay for the crack.
 
 
 6
 Chattman and Parris had a one-minute conversation regarding possible transactions in the future. Parris then returned to his car and drove off, notifying the surveillance team that the deal had been completed.
 
 
 7
 The substance purchased by Parris from Chattman was subsequently confirmed to be crack cocaine. Using the license plate from the automobile, it was determined that the car driven by Chattman was registered in his mother's name.
 
 
 8
 On April 3rd, Parris again called Chattman's pager number, but received no return phone call.
 
 
 9
 Once again, on April 9th, Parris called Chattman's pager number. Chattman called Parris back, and the two talked about "future transactions and the defendant stated that he was going to get another supply of crack cocaine and would get back with me when he did." J.A. 20. Chattman never did "get back with" Parris, however, and, despite attempts to contact him, Parris was never able to contact Chattman again.
 
 
 10
 Chattman, testifying on his own behalf, admitted to meeting Parris and the informant at Applebee's, but denied that the topic of conversation was drug transactions. He testified that he did not speak to, or see, Parris again until one day, quite by accident, he ran into Darrell, who asked him for a ride to the Burger King on Fort Jackson. Chattman agreed. At the Burger King, Chattman left the car running and went in to get a drink. When he returned to the car, Darrell told him "like, 'You can pull off.' " J.A. 59. Chattman complied with this instruction.
 
 
 11
 Chattman's testimony continued that, after he and Darrell had left the Burger King and were driving along, Chattman "noticed somebody blinking his lights." J.A. 59. Chattman asked Darrell if he recognized the car behind them. Darrell responded simply by instructing Chattman to " 'pull over.' " J.A. 59. Chattman did as he was told. Darrell got out of the car, whereupon the other car pulled up next to him. Darrell and the driver of the car spoke, and then Darrell got back into the front seat of Chattman's car, and the other driver got into the back seat. The other driver asked Darrell who Chattman was. Darrell identified Chattman, who "just glanced at him, that was it." J.A. 59. The other driver was not identified by Chattman as Parris; says Chattman, "He looked familiar but I didn't pay any attention." J.A. 60.
 
 
 12
 The other driver then exited Chattman's car. Darrell told Chattman to leave, and Chattman complied. He then dropped Darrell off at the Columbia mall, after which time he claims to have had no contact with him.
 
 
 13
 A jury evidently disbelieved the account of the events given by Chattman and convicted him of distribution of crack cocaine.
 
 II.
 
 14
 After trial, the prosecution informed the district court and the defendant that it had discovered information which tended to cast doubt on certain portions of the testimony of prosecution witnesses. On this basis, Chattman moved for a new trial. The district court denied the motion. Chattman appeals this denial.
 
 
 15
 Chattman's theory of defense at trial was that Darrell was the person who actually distributed the crack cocaine and that Chattman was the innocent provider of transportation. "In an effort to derail this defense," Appellee's Br. 6, the government adopted a strategy which, as we understand it, proceeded as follows. Parris and Gil Altman ("Altman"), a government surveillance agent, both testified that "the drug investigators at Ft. Jackson normally arrested an individual after an initial drug distribution only if the identity of the distributor was not known to the investigators." Appellee's Br. 6. In the instant case, neither Chattman nor Darrell was arrested immediately following the drug transaction underlying the offense at issue. Parris testified that Darrell was never apprehended by law enforcement authorities nor was any further identification of him ever made. Given the testimony of the investigators as to the standard according to which targets of drug investigations are arrested, and the fact that Darrell was unknown to the surveillance agents yet never arrested, it follows that Chattman was known to law enforcement agents at the time--a conclusion which is entirely consistent with Parris' testimony regarding his relationship with Chattman.[1]
 
 
 16
 After trial, the prosecution informed the court and the defendant that, in fact, three files indicated that, contrary to some of the testimony offered by Parris and Altman, three unknown targets of drug investigations were not arrested immediately after an initial transaction. On this basis, Chattman moved for a new trial.
 
 
 17
 For a new trial to be granted pursuant to Fed.R.Crim.P. 33 based upon newly-discovered evidence,
 
 
 18
 (a)the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b)facts must be alleged from which the court may infer diligence on the part of the movant; (c)the evidence relied on must not be merely cumulative or impeaching; (d)it must be material to the issues involved; and (e)it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.
 
 
 19
 United States v. Custis, 988 F.2d 1355, 1359 (4th Cir.) (quoting United States v. Bales, 813 F.2d 1289, 1295 (4th Cir.1987)), cert. granted in unrelated part, 114 S.Ct. 299 (1993).[2]
 
 
 20
 Even assuming that the newly-discovered evidence in this case is other than pure impeachment evidence and that, as a consequence, the third prong of the Custis test is met, we think it clear, as the district court found, that neither the fourth nor the fifth prong of Custis is fulfilled here. The newly-discovered evidence involving the conduct of enforcement officials in unrelated cases is not material to the question of Chattman's guilt and, most important, hardly can it be said that the jury would probably have acquitted Chattman had the newly-discovered evidence been before the jury.
 
 III.
 
 21
 Pursuant to U.S.S.G. Sec. 3C1.1, if the district court finds that the defendant obstructed justice, then the defendant's sentence is to be enhanced. The district court here found that Chattman obstructed justice by perjuring himself at trial. We review the district court's factual finding of perjury under the clearly erroneous standard. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989).
 
 
 22
 The Supreme Court has stated that, under section 3C1.1, the generally accepted definition of perjury applies: "A witness testifying under oath or affirmation [commits perjury] if [he or] she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." United States v. Dunnigan, 113 S.Ct. 1111, 1116 (1993). Under this definition, if the defendant objects to an enhancement arising out of his trial testimony,
 
 
 23
 a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out. When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if ... the court makes a finding of obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury.
 
 
 24
 Id. at 1117 (citations omitted).
 
 
 25
 Here, the district judge made specific reference to the Supreme Court's opinion in Dunnigan. He then stated:
 
 
 26
 [A]fter reflecting on the trial, and reviewing my notes of the trial, and also after having my recollection stimulated a little bit by [the prosecutor] on some of these inconsistencies in the testimony by the defendant and the agent[,] I find as a fact the defendant did commit perjury in at least some material respect in his testimony at trial.
 
 
 27
 J.A. 102. The district judge did not adhere to the Dunnigan Court's preferred approach of making specific findings as to each element of perjury. He did, however, "make[ ] a finding of obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." That is sufficient under Dunnigan to support an enhancement for perjury.
 
 
 28
 Finally, we cannot agree with Chattman that the district judge's finding in this regard is clearly erroneous.
 
 IV.
 
 29
 Because Chattman's assignments of error on appeal are devoid of merit, we affirm Chattman's conviction and sentence.
 
 AFFIRMED
 
 
 [1]
 It is not clear to us how effective the evidence elicited by the prosecution is to disprove Chattman's theory of defense. Moreover, to whatever extent it may serve some government end, we think it far more confusing than probative on the issue of Chattman's guilt
 
 
 [2]
 The Supreme Court has granted certiorari on an unrelated question in this case. We note that neither the appellant nor the government recognizes that certiorari has been sought, let alone granted, if only in part, in Custis