**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Randy Gean ELLIS, Defendant–**
**Appellant.**

**No. 99–30261.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 2000

Filed Feb. 15, 2001

Terri Wood, Eugene, Oregon, for the appellant.

William E. Fitzgerald, Assistant United States Attorney, Eugene, Oregon, for the appellee.

Before: FERGUSON, GRABER, and W. FLETCHER, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge:

Randy Gean Ellis ("Ellis") appeals his sentence after conviction for failing to appear at sentencing, in violation of 18 U.S.C. § 3146(a)(1); assaulting a federal officer, in violation of 18 U.S.C. § 111(a)(1); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Ellis contends that the district court made several mistakes during sentencing.

First, Ellis contends that the district court made three errors in applying the Sentencing Guidelines. He argues that the court erred in enhancing his sentence pursuant to U.S.S.G. § 2K2.1(b)(5) for possessing a firearm "in connection with" another felony offense. He further argues that the court erred in refusing to grant a downward departure under U.S.S.G. § 2K2.1(b)(2) because the firearm was possessed solely for "sporting purposes" or "collection." Finally, he argues that the court improperly enhanced his sentence pursuant to U.S.S.G. § 2J1.7 for committing a criminal offense while "on release."

Second, Ellis contends that the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), requires that the sentence enhancement applied by the district court under U.S.S.G. § 2J1.7 be reversed because it was based on factual findings that were not submitted to a jury for proof beyond a reasonable doubt.

We agree with Ellis that he did not possess a firearm "in connection with" another felony offense within the meaning of U.S.S.G. § 2K2.1(b)(5). We also believe that Ellis may be entitled to a downward departure under U.S.S.G. § 2K2.1(b)(2). We otherwise disagree with his contentions. We affirm in part and reverse in part, and we vacate Ellis' sentence and remand for resentencing.

I

The events giving rise to this appeal took place while Ellis was awaiting sentencing after conviction on two charges of illegally receiving and possessing explosives. Ellis had been ordered to present himself for sentencing in district court on the morning of July 16, 1997. He failed to appear as scheduled, and the court immediately issued a bench warrant for his arrest. That afternoon, Klamath County Sheriff's deputies went to Ellis' workplace, hoping to arrest him there.

Ellis had indeed gone to work that day, under the mistaken belief (according to his trial testimony) that his sentencing hearing was to take place on July 23. When a co-worker informed him that "some people up front" had a warrant for his arrest, Ellis called his attorney, who informed him that he had missed his hearing and advised Ellis to turn himself in. Instead, Ellis eluded the deputies by fleeing through a back door of the building. He went to the house of a friend, and then was taken by his girlfriend Caryl Lynn Adkisson ("Adkisson") to the home of another couple, where both Ellis and Adkisson spent the night of July 16. On July 17, they returned to Adkisson's home, where Ellis had been living, and spent the night there.

On July 18, federal marshals and sheriff's deputies entered and searched Adkisson's home. During the search, the officers discovered an unloaded hunting rifle wrapped in a towel on a closet shelf in the bedroom that Ellis and Adkisson shared. Ellis was hiding in the same closet when the officers found the rifle, but they did not see him at that time. When they returned to the closet to seize the rifle

after completing their search of the house, the officers discovered Ellis crouching on the floor behind a garment bag. Ellis struggled briefly when the officers arrested him, but he made no attempt to reach for the rifle.

Ellis was charged in a three-count indictment with failing to appear for sentencing, arising out of his failure to appear on July 16; assaulting a federal officer, arising out of the scuffle incident to his arrest on July 18; and being a felon in possession of a firearm, arising out of his constructive possession of the rifle on the closet shelf. After a jury trial, Ellis was found guilty on all three counts. Prior to sentencing, he waived his right to appeal his convictions (though not the length of his sentence) in return for dismissal of the explosives charges of which he had previously been convicted.

At sentencing, the district court began by grouping Ellis' three counts pursuant to U.S.S.G. § 3D1.2. The court then applied two sentence adjustments. Finding that Ellis had possessed the rifle "in connection with" his felonious failure to appear, it added a four-level enhancement under U.S.S.G. § 2K2.1(b)(5). The Court then added a three-level enhancement under U.S.S.G. § 2J1.7 because the firearm possession charge had been committed while Ellis was "on release." When combined with his criminal history, Ellis' offense level yielded a guideline sentencing range of 70 to 87 months, from which the court selected 75 months.

The district court then imposed additional sentences of six months each for the failure to appear and the assault on a federal officer. Under 18 U.S.C. § 3146, a sentence for failure to appear must be served "consecutive to the sentence of imprisonment for any other offense." Under 18 U.S.C. § 3147, the sentence for assault on a federal officer must be consecutive because that crime was committed while Ellis was released pending sentencing. The district court accordingly imposed a total sentence of 87 months.

## II

Ellis raises three objections to the district court's application of the Sentencing Guidelines. We review a district court's interpretation of the guidelines *de novo* and its application of the guidelines to the facts of a particular case for abuse of discretion. *See United States v. Leon–Reyes,* 177 F.3d 816, 824 (9th Cir.1999); *United States v. Smith,* 175 F.3d 1147, 1148 (9th Cir.1999). We review factual findings for clear error. *See United States v. Maldonado,* 215 F.3d 1046, 1050 (9th Cir.2000).

### A

Ellis first objects to the district court's four-level upward adjustment under U.S.S.G. § 2K2.1(b)(5). That section requires the district court to increase a defendant's offense level "if the defendant used or possessed any firearm or ammunition in connection with another felony offense."

Ellis' testimony in the district court did establish that he possessed the firearm within the meaning of the Guidelines, *see United States v. Terry,* 911 F.2d 272, 278 (9th Cir.1990), but possession alone does not merit an upward adjustment under § 2K2.1(b)(5). *See United States v. Polanco,* 93 F.3d 555, 566 (9th Cir.1996). That section requires in addition that the possession be "in connection with" another felony offense. We have construed this phrase to mean that the firearm must have been "possessed in a manner that permits an inference that it facilitated or potentially facilitated-i.e. had some potential emboldening role in-a defendant's felonious conduct." *United States v. Routon,* 25 F.3d 815, 819 (9th Cir.1994).

The government contends that the rifle's proximity to Ellis' hiding place on the day of his arrest is sufficient to establish that he used it "in connection with" his failure to appear. Alternatively, the government contends that Ellis used the rifle "in connection with" his failure to appear

during the entire period in which he was in failure-to-appear status. We disagree with both contentions.

Uncontradicted evidence in the district court showed that the rifle had been a Christmas gift to Adkisson from her ex-husband; that Adkisson had never used the rifle; and that there was no ammunition anywhere in her house. Ellis testified without contradiction that he had discovered the rifle on the closet shelf, wrapped in a towel, several weeks before his arrest. According to his testimony, Ellis took the rifle from the shelf, inspected it, and determined that it was not loaded. He testified that he checked to see if the gun was loaded because he was concerned for the safety of Adkisson's two children. He then wiped it down, re-wrapped it, and put it back on the shelf. When Ellis was discovered by the officers, the rifle was roughly eleven feet from his hiding place on the floor of the closet. Ellis made no attempt to reach for the rifle during the brief struggle incident to his arrest.

Based on this evidence, the district court appears to have disagreed with the government's first contention. It stated that if the "in connection with" analysis under § 2K2.1(b)(5) were based solely on the circumstances of Ellis' arrest, "the defendant would have a pretty good argument." We believe that the district court was correct. Under the circumstances of this case, the rifle neither "facilitated" nor "emboldened" Ellis while he hid in the closet and scuffled with the officers on July 18.

■ The district court agreed with the government's alternative contention, however, stating that it enhanced Ellis' sentence because he possessed the rifle "in connection with" his failure to appear for sentencing during the entire time of his failure to appear, not merely during the brief period incident to his arrest. During the sentencing hearing, the court stated:

> [T]he enhancement is for possession of the gun while in failure-to-appear status. And that is not an instantaneous consideration. That occurred over a period of time. This defendant had plenty of time

to make sure this weapon was out of the residence, but did not do so.

The court also wrote in its findings of fact, to the same effect, that "the increase for possession of a firearm is appropriate as the defendant was in possession of the firearm during the entire time he was a fugitive."

We agree with the district court that the connection of a firearm to felonious conduct can occur at any time during the course of the felony, but we find no such connection here. Ellis' possession "in connection with" the felony of failing to appear could have occurred only between Ellis' failure to appear on July 16 and his arrest on July 18. During those three days the rifle was wrapped in a towel on the closet shelf, and Ellis never touched it. On the morning of July 16, the day he failed to appear in the district court for sentencing, Ellis went to work rather than staying home near the rifle. When he fled his workplace to avoid arrest that day, his initial destination was a friend's house, not Adkisson's. And, as noted above, when Ellis hid in the closet on July 18, he made no attempt to remove the rifle from its storage place on the closet shelf or to use it in any way.

In light of this evidence, we hold that the district court erred in determining that the availability of Adkisson's rifle facilitated or emboldened Ellis' failure to appear for sentencing between July 16 and 18. The presence of the rifle on the closet shelf was instead just the sort of "accident or coincidence" that the phrase "in connection with" was specifically meant to exclude from coverage under the statute. *See Smith v. United States*, 508 U.S. 223, 238, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (interpreting phrase "in relation to" in 18 U.S.C. § 924(c)(1)); *Polanco*, 93 F.3d at 566 (noting Ninth Circuit practice of equating "in relation to" language of § 924(c) with "in connection with" language of § 2K2.1(b)(5)).

## B

Ellis next argues that he is entitled to a downward adjustment of his sentence pursuant to U.S.S.G. § 2K2.1(b)(2). That section provides: "If the defendant ... possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6." A defendant must prove that he is entitled to this reduction by a preponderance of the evidence. *See United States v. Gavilan,* 966 F.2d 530, 532 (9th Cir.1992). The district court made no factual findings on the "sporting purposes or collection" issue, stating only that it did not "think the facts support that [adjustment]."

The application note for § 2K2.1(b)(2) states that the circumstances relevant to the application of the downward adjustment for sporting purposes or collection include:

> [T]he number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of defendant's criminal history (*e.g.,* prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law.

The evidence in the record indicates that, in Ellis' case, these factors do not all point in the same direction.

Ellis had previously been convicted of "offenses involving firearms," although the circumstances of those convictions were different from the circumstances in this case. He was convicted in 1991 of stealing 46 guns that he apparently intended to sell for profit, and he was convicted in 1993 of being a felon in possession when he was found in a car with two loaded handguns. On the other hand, Adkisson's possession of the rifle may have been for "collection purposes" within the meaning of § 2K2.1(b)(2), and Ellis' possession may have been derivative of Adkisson's. *See United States v. Mojica,* 214 F.3d 1169, 1172 (10th Cir.2000) ("Mr. Mojica estab-

lished that the shotgun was obtained and used solely for lawful sporting purposes by his brother[.] ... His acquisition of the shotgun through constructive possession, therefore, was solely for lawful sporting purposes."); *United States v. Moit,* 100 F.3d 605, 606–07 (8th Cir.1996) ("Moit argued that the evidence established his father possessed the guns as keepsakes, solely for collection purposes, and that Moit kept the guns in his 'house for his father.... We reject the government's argument that one who possesses a gun collection owned by another can never receive a section 2K2.1(b)(2) decrease.").

The district court's denial of a downward adjustment under § 2K2.1(b)(2) appears to have been influenced, perhaps even dictated, by its application of § 2K2.1(b)(5). Once the district court concluded that Ellis possessed the rifle "in connection with" the commission of a felony, it would have been difficult, if not impossible, for the court to find that the rifle was kept solely for sporting purposes or collection. We do not know what conclusion the district court would have reached if it had considered the availability of a sentence reduction under § 2K2.1(b)(2) independently of its conclusion under § 2K2.1(b)(5). We therefore remand for reconsideration of the applicability of § 2K2.1(b)(2).

## C

Finally, Ellis argues that the district court erred in adding three points to the offense level for his firearm possession conviction because he committed that offense while "on release" pending sentencing. This upward adjustment is based on 18 U.S.C. § 3147, which provides:

> A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense to—
>
> (1) a term of imprisonment of not more than ten years if the offense is a felony; or

(2) a term of imprisonment of not more than one year if the offense is a misdemeanor.

A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

Section 3147 is implemented in the Sentencing Guidelines by U.S.S.G. § 2J1.7, which provides: "If an enhancement under 18 U.S.C. § 3147 applies, add 3 levels to the offense level for the offense committed while on release as if this section were a specific offense characteristic contained in the offense guideline for the offense committed while on release."

■ Ellis' indictment charged him with felonious possession of a firearm "on or about July 18, 1997." The district court had issued a bench warrant for Ellis' arrest two days earlier, when he failed to appear for sentencing on the explosives conviction. Ellis contends that the issuance of the warrant revoked his release and that, as a result, he was no longer "on release" after July 16. Accordingly, Ellis argues, he was outside the purview of 18 U.S.C. § 3147 and U.S.S.G. § 2J1.7 at the time of the charged offense.

Ellis relies on *United States v. Castaldo,* 636 F.2d 1169 (9th Cir.1980), to support his argument. In *Castaldo,* we considered the appeal of a defendant convicted of bail jumping in violation of now-repealed 18 U.S.C. § 3150.[1] That section applied to individuals who, "having been released pursuant to this chapter ... willfully fail[ed] to appear before any court or judicial officer as required." After Castaldo failed to appear at a bail revocation hearing, the district court ordered his bail forfeited and issued a warrant for his arrest. The district court then ordered Castaldo to appear at another hearing, which he (not surprisingly) also failed to do. Castaldo was convicted of bail jumping under § 3150 for failing to appear at the second, rather than the first, hearing. Like Ellis, Castaldo argued that once the district court issued a warrant for his arrest and forfeited his bail, he was no longer "released" within the meaning of the statute. We agreed with Castaldo, holding that when he failed to appear for his second hearing he was a "fugitive," and that he therefore could not be prosecuted for bail jumping based on his failure to appear. *See id.* at 1171–72.

For several reasons, *Castaldo* does not compel the conclusion that Ellis was no longer "on release" after July 16. First, when the district court ordered Castaldo to appear in court for the second hearing, he had jumped bail and was already a fugitive. Our reversal of that conviction recognized the anomaly presented by such a situation: Castaldo had already forfeited his bail and exposed himself to criminal charges by missing his first hearing, and the district court had already issued an arrest warrant based on his failure to appear. It made no sense to invoke § 3150 again when he missed subsequent court-ordered appearances. We read *Castaldo* to hold under § 3150 that defendants who jump bail can be convicted for bail jumping based only on their *first* failure to appear. Under *Castaldo,* the government cannot pile criminal charges upon a fleeing defendant by repeatedly ordering appearances at hearings and then prosecuting the repeated failures to appear.[2]

Second, we believe that the policy justification articulated in *Castaldo* does not apply to Ellis' case. We noted in *Castaldo* that the purpose of § 3150 was to promote

1. Section 3150 was repealed in 1984. *See* Pub.L. 98–473, 98 Stat.1976 (1984). The current provisions criminalizing bail jumping appear at 18 U.S.C. § 3146.

2. Reading *Castaldo* in this way resolves its tension with the Seventh Circuit's decision in *Milhem v. United States,* 834 F.2d 118 (7th Cir.1987). *Milhem* ruled that simple issu-

ance of an arrest warrant, without more, does not extinguish the effect of the failure-to-appear statute. That is, a person remains "on release" even after a warrant for his arrest issues. The Seventh Circuit specifically distinguished *Castaldo* on the grounds that Castaldo's bail was forfeited at the time the warrant for his arrest was issued, whereas Milhelm's was not.

"an effective deterrent of nonappearance." *Id.* at 1171. Where a defendant like Castaldo had already failed to appear once, additional sanctions for future failures to appear would be unlikely significantly to deter such conduct. But Ellis' sentence was not enhanced because he failed to appear, but because he engaged in independent criminal activity after his failure to appear. Section 3147, in contrast to § 3150, was designed "to deter those who would pose a risk to community safety by committing *another* offense when released under the provision of this title and to punish those who indeed are convicted of another offense." S.Rep. No. 98–225, at 65–66 (1984) (emphasis added).

Finally, we note that, since *Castaldo* was decided, Congress has clarified the procedures for terminating release status. In 1984, Congress enacted 18 U.S.C. § 3148, which specifies in relevant part:

> A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer ... for a proceeding in accordance with this section.... The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer–
>
> (1) finds that there is–
>
>   (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>
>   (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that–
>
>   (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
>   (B) the person is unlikely to abide by any condition or combination of conditions of release.

By stating that a judge "may issue a warrant for the arrest" of a released defendant in order to secure his presence for a release revocation hearing, § 3148 clearly contemplates that the issuance of the warrant is an event distinct from the revocation of release. We would frustrate Congress' requirements for revocation if we were to hold that release can be revoked for purposes of § 3147 and U.S.S.G. § 2J1.7 simply by the issuance of an arrest warrant.

This result accords not only with the current statute but with common sense. Release orders often include numerous conditions by which a defendant must abide in order to avoid incarceration. In Ellis' case these included requirements that he stay in Oregon, submit to searches by probation officers, and remain employed. We are reluctant to construe *Castaldo* to mean that a defendant who violates one condition of release, and for whom an arrest warrant is issued, is thereby freed from any obligation to abide by other conditions of release.

■ We therefore do not believe that *Castaldo* supports a conclusion that the warrant for Ellis' arrest insulates him from sentence enhancement under 18 U.S.C. § 3147 and U.S.S.G. § 2J1.7. We hold that, for purposes of sentence enhancement under § 2J1.7, a person may remain "on release" as that term is used in that guideline and in § 3147 even after a warrant is issued for his or her arrest.

### III

■ Ellis also argues that violation of 18 U.S.C. § 3147 constitutes a separate criminal offense, rather than a mere sentence enhancement under U.S.S.G. § 2J1.7, and that the question of his guilt should therefore have been submitted to a jury and proved beyond a reasonable doubt under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* states that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond

the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362–63, 120 S.Ct. 2348. Relying on this language, Ellis contends that the question of whether he was "on release" at the time he possessed the rifle was never submitted to a jury, and that it is therefore unconstitutional to enhance his sentence under § 3147 and § 2J1.7.

Ellis fails to satisfy the threshold condition of *Apprendi* that the actual sentence imposed be longer than the maximum sentence for the crime for which a defendant has been validly convicted. The statutory maximum penalties for Ellis' convictions were, respectively, ten years for possession of a firearm in violation of 18 U.S.C. § 922(g) *see id.* § 924(a)(2); ten years for failure to appear for sentencing, *see id.* § 3146(b)(1)(A)(i); and one year for assault. *See id.* § 111(a). Ellis' total sentence was only 87 months of imprisonment, far less than the 120-month maximum term for his firearm conviction alone.

## IV

Because we hold that the district court erred in enhancing Ellis' sentence under U.S.S.G. § 2K2.1(b)(5), and that this error may have influenced the court's finding under § 2K2.1(b)(2), we vacate his sentence. On remand, the district court is directed to sentence Ellis without applying the § 2K2.1(b)(5) enhancement, and to reconsider the availability of a sentence reduction under § 2K2.1(b)(2).

AFFIRMED in part and REVERSED in part. Sentence VACATED, and case REMANDED for resentencing.