**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOSEPH RICHARD PERRY, JR.,
*Defendant-Appellant.*

No. 00-4059

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOSEPH RICHARD PERRY, JR.,
*Defendant-Appellant.*

No. 00-4303

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge;
Albert V. Bryan, Jr., Senior District Judge.
(CR-99-41-A, CR-99-387-A)

Argued: May 10, 2001

Decided: June 21, 2001

Before WILLIAMS and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Paul Peter Vangellow, PAUL P. VANGELLOW, P.C., Falls Church, Virginia, for Appellant. S. Brian Huseman, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

In this consolidated appeal, we consider two appeals brought by Joseph Perry, Jr. (Perry). In the first appeal, Perry appeals from a judgment entered by the district court following his conviction for operating a motor vehicle while classified as an habitual offender, 18 U.S.C. § 13 (assimilating Va. Code Ann. § 46.2-357(B)(3)). In the second appeal, Perry appeals from a judgment entered by the district court following his convictions for failing to appear, 18 U.S.C. § 3146(a)(1), and criminal contempt, 18 U.S.C. § 401(3). For the reasons stated below, we affirm the district court's judgments.

I

On October 27, 1997, at approximately 8:00 p.m., Perry drove a vehicle onto the premises of the Central Intelligence Agency (CIA) in Langley, Virginia, using the main access road from Route 123. Perry approached a mandatory stop, where there was a "speaker box," with a camera affixed. (J.A. 49). Perry used the speaker box and communicated with CIA Special Agent Todd Dunn (Agent Dunn).[1] Perry

---

[1]On the evening of October 27, 1997, Agent Dunn "was working the main gate in a special protective officer status, monitoring traffic coming into the agency and leaving the agency." (J.A. 44-45).

stated that he was lost and needed directions. Agent Dunn instructed Perry to drive the vehicle to the end of the parking lot, where he would be assisted. In response, Perry drove the vehicle to the end of the parking lot.

When Agent Dunn approached the vehicle, he detected a "strong" odor of alcohol emanating from the vehicle. (J.A. 50). Agent Dunn asked Perry if he had been consuming alcohol, and Perry replied that he had. Agent Dunn then asked Perry to exit the vehicle, and Perry complied. Agent Dunn asked Perry to produce a valid driver's license. Perry did not produce a valid driver's license, but instead produced a Virginia identification card. Agent Dunn ran a computer check of the Virginia identification card and found that Perry was operating the vehicle under a suspended and revoked license and that Perry was an habitual offender in the State of Virginia.

Because the CIA does not have the capability to conduct field sobriety tests, Agent Dunn contacted the Fairfax County Police Department. In approximately ten minutes, Fairfax County police officer Keith Carrero (Officer Carrero) arrived at the scene. At the scene, in plain view, Officer Carrero saw an open container of alcohol inside the vehicle. At that time, Perry was arrested for drunkenness in public.

On January 21, 1999, a federal grand jury sitting in the Eastern District of Virginia returned a one-count indictment charging Perry with operating a motor vehicle while classified as an habitual offender in violation of 18 U.S.C. § 13 (assimilating Va. Code Ann. § 46.2-357(B)(3)). At his arraignment on February 1, 1999, the district court set Perry's trial date for March 16, 1999, at 10:00 a.m., and remanded him to the custody of the government.

Perry moved to suppress the open container of alcohol recovered in the vehicle and the statement he made to Agent Dunn that he had been consuming alcohol. After a hearing on February 26, 1999, the district court denied the motion.

Following its ruling on Perry's motion to suppress, the district court modified Perry's bond conditions to permit electronic monitoring and home confinement at the residence of Perry's third-party cus-

todian, Cindy Landau. Perry was formally placed on electronic monitoring on March 2, 1999.

On March 5, 1999, between 8:00 and 8:30 a.m., Perry reported to pretrial services officer Dan Voice (Officer Voice) at Officer Voice's office at the United States Courthouse in Alexandria. Perry was at the courthouse that day to plead guilty to the operating a motor vehicle while classified as an habitual offender charge pursuant to a plea agreement. During the meeting, Officer Voice went over Perry's bond conditions to ensure that Perry was being compliant and asked Perry to report to him after his (Perry's) court appearance so arrangements could be made for Landau to pick Perry up at the courthouse.

Perry appeared in court on the morning of March 5, 1999, but decided not to plead guilty. After appearing in court, Perry went to the pretrial services waiting area, but Officer Voice was not immediately available to meet with him. When Officer Voice went to the waiting area to meet Perry, Perry was gone. Attempts to locate Perry through Landau failed. When the district court was apprised of the situation, a bench warrant was issued for Perry's arrest. On March 12, 1999, the district court ordered Landau to appear in court on March 19, 1999 to show cause why she should not be held in contempt of the order appointing her third-party custodian.

Between 3:45 and 4:00 p.m. on March 15, 1999, agents of the United States Marshal's Service apprehended Perry at his parents' house in Reidsville, North Carolina. At the time they apprehended Perry, the marshals did not observe any luggage or packed bags and did not find any train, bus, or plane tickets in the house or on Perry's person.

At the show cause hearing on March 19, 1999, the district court indicated that a new trial date for Perry would be set once he was returned to the Eastern District of Virginia. Perry was returned to the Eastern District of Virginia on March 26, 1999. Following a bench trial on October 6, 1999, Perry was convicted of the operating a motor vehicle while classified as an habitual offender charge.[2] On January

---

[2]The evidence at trial showed that, on June 10, 1990, the Circuit Court of Prince William County, Virginia declared Perry to be an habitual

7, 2000, the district court sentenced Perry to two years' imprisonment on the operating a motor vehicle while classified as an habitual offender charge. On January 14, 2000, the district court entered its judgment, and Perry noted a timely appeal.

Approximately three weeks after Perry was convicted of operating a motor vehicle while classified as an habitual offender, a federal grand jury sitting in the Eastern District of Virginia returned a two-count indictment charging Perry with failing to appear, 18 U.S.C. § 3146(a)(1), and criminal contempt, 18 U.S.C. § 401(3). Following a bench trial on January 10, 2000, the district court convicted Perry of both charges. On March 31, 2000, the district court sentenced Perry to twenty-one months' imprisonment on the failure to appear charge and a concurrent six-month sentence of imprisonment on the criminal contempt charge. The district court also ordered that these sentences run consecutive to any sentence currently being served or imposed. The district court entered its judgment on March 31, 2000, and on April 6, 2000, Perry noted a timely appeal.

II

Perry argues that the district court erred when it denied his motion to suppress. We disagree.

The district court found that Perry's encounter with Agent Dunn was a consensual encounter that ripened into a *Terry*[3] stop once Agent Dunn smelled the odor of alcohol. The district court also found that the stop was reasonable and that it lasted for a reasonable amount of time. The district court further found that Agent Dunn, upon approaching the vehicle and detecting a strong odor of alcohol, had

---

offender effective ten years from June 8, 1990. The entry of the Prince William County Circuit Court's order made it illegal for Perry to operate a motor vehicle in the State of Virginia. Va. Code Ann. § 46.2-357(A). The evidence also showed that Perry was twice found guilty of driving after having been declared an habitual offender: first, by Fairfax County District Court on January 23, 1995; and second, by Arlington County Circuit Court on May 24, 1995. These adjudications opened the door for a more severe punishment for a subsequent offense. *Id.* § 46.2-357(B)(3).

[3]*Terry v. Ohio*, 392 U.S. 1 (1968).

probable cause to make an arrest. Finally, the district court determined that the open container of alcohol was found in plain view during the course of the *Terry* stop.

We review the district court's findings of fact on a motion to suppress under the clearly erroneous standard. *United States v. Rusher*, 966 F.2d 868, 873 (4th Cir. 1992). However, the district court's legal conclusions on a motion to suppress are reviewed *de novo*. *Id.*

Perry argues that his presence on the CIA's premises was by mistake, accident, or inadvertence and, therefore, his encounter with Agent Dunn in the parking lot was nonconsensual. Because his encounter with Agent Dunn was nonconsensual, Perry argues that the district court should have analyzed this case under the jurisprudence of administrative seizures. Perry also argues that Agent Dunn should have given him directions over the speaker box, rather than directing him to drive into the parking lot. The government argues that Agent Dunn's encounter with Perry in the parking lot was consensual and that, after Agent Dunn detected the odor of alcohol, this fact permitted a brief detention of Perry to determine whether he was driving under the influence of alcohol.[4]

Although a person may not be seized without a reasonable suspicion of criminal activity, the Fourth Amendment is not triggered by a consensual encounter between a police officer and a private citizen. *United States v. Burton*, 228 F.3d 524, 527 (4th Cir. 2000). Determining whether an encounter between a citizen and a police officer is a Fourth Amendment seizure or a consensual encounter raising no constitutional questions requires consideration of many different factors, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the

---

[4]Because the parties and the district court analyzed the encounter between Agent Dunn and Perry under our consensual encounter/reasonable suspicion jurisprudence, we will assume, *arguendo*, that the search in this case, which took place on the property of the CIA, is governed by this precedent. In its brief, the government notes that it is unnecessary for us to address the permissible scope of searches on CIA property in view of the fact that the encounter between Agent Dunn and Perry was purely consensual. Appellee's Br. at 11 n.1.

citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

Agent Dunn's conduct suggests that his initial encounter with Perry in the parking lot was a consensual encounter. The encounter initially involved only Perry's request for assistance, which was followed by Agent Dunn's reasonable response that assistance would be provided if Perry drove his vehicle to the end of the parking lot. When Agent Dunn approached the vehicle, he did not display a weapon nor did he touch Perry. Further, Agent Dunn did not detain or block the vehicle in any way. Finally, there is no evidence that Agent Dunn used a commanding or threatening manner or tone of voice. In short, Agent Dunn's initial encounter with Perry in the parking lot was a quintessential consensual encounter.

A police officer may elevate a police-citizen encounter into an investigatory detention only if the officer has a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Reasonable suspicion is something more than an "inchoate and unparticularized suspicion or 'hunch,'" *Terry*, 392 U.S. at 27, and it is the government's burden to articulate facts sufficient to support reasonable suspicion, *Brown v. Texas*, 443 U.S. 47, 52 (1979).

Once Agent Dunn detected the odor of alcohol, this fact supported the investigatory detention of Perry for a reasonable period of time to ascertain whether he was operating a vehicle under the influence of alcohol. During the reasonable investigation into Perry's sobriety that ensued, Perry openly admitted to Agent Dunn that he had been consuming alcohol and, thereafter, the open container of alcohol was discovered in plain view by Officer Carrero. We see no basis for the suppression of this evidence. Accordingly, the district court did not err when it refused to suppress Perry's statement that he had been consuming alcohol and the open container of alcohol recovered by Officer Carrero.[5]

---

[5]Perry also argues that the district court should have required the government to produce regulations regarding the treatment of unauthorized persons on CIA property. We have reviewed this argument and find it to be without merit.

### III

Perry also argues that his conviction for operating a motor vehicle while classified as an habitual offender must be set aside because "the underlying habitual offender adjudication was void *ab initio*." Appellant's Br. at 16. According to Perry, the underlying habitual offender adjudication was void *ab initio* because "there was no record notice of the hearing with respect to the adjudication in 1990." (J.A. 37). Under the authority of *Mays v. Harris*, 523 F.2d 1258 (4th Cir. 1975), the district court rejected this argument.

In *Mays*, the petitioner had been convicted of operating a motor vehicle while classified as an habitual offender. The district court granted the petitioner's habeas corpus petition because it found that two of the four convictions underlying the petitioner's habitual offender status were invalid due to the lack of counsel. *Id.* at 1259. On appeal, we reversed because "the sentence about which [the petitioner] complains does not depend on the validity of the underlying convictions." *Id.* In reaching this conclusion, we stated:

> [The petitioner] can test his adjudication as an habitual offender, but he cannot with impunity choose to ignore the adjudication and resulting injunction for . . . in the fair administration of justice no man can be judge in his own case.
>
> To permit one who has been adjudged an habitual offender to disregard his status, however vulnerable, and later defend any conviction for doing so by asserting the invalidity of his underlying convictions is to allow him to judge his own case. That he may not do.

*Id.* at 1259-60 (citation and internal quotation marks omitted).

Like *Mays*, Perry's conviction for operating a motor vehicle while classified as an habitual offender does not rest on the validity of his conviction underlying his habitual offender status. Rather, his conviction for operating a motor vehicle while classified as an habitual offender rests on the fact that he operated a motor vehicle while under

a court order not to do so. That he plainly violated the 1990 order is not in doubt. Thus, whether Perry challenges the underlying habitual offender conviction or the habitual offender adjudication itself, *Mays* prohibits him from disregarding his habitual offender status by asserting the invalidity of his status. *Id.* Accordingly, the district court properly prevented Perry from attacking his habitual offender adjudication in defense of the charge of operating a motor vehicle while classified as an habitual offender.

IV

Perry raises several arguments attacking the sufficiency of the evidence supporting his conviction for failing to appear, 18 U.S.C. § 3146(a)(1). In reviewing challenges to the sufficiency of the evidence, we must determine whether there is substantial evidence, when viewed in the light most favorable to the government, to support the conviction. *Glasser v. United States*, 315 U.S. 60, 80 (1942). In determining whether the evidence in the record is substantial, this court inquires whether there is evidence that a reasonable finder of fact could accept as adequate and sufficient to support defendant's guilt. *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (*en banc*). "[A]n appellate court's reversal of a conviction on grounds of insufficient evidence should be 'confined to cases where the prosecution's failure is clear.'" *United States v. Jones*, 735 F.2d 785, 791 (4th Cir. 1984) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)). In bench trials, "the judge weighs the evidence, determines the credibility of the witnesses, and finds the facts[,]" and "may select among conflicting inferences to be drawn from the testimony." *United States v. Bales*, 813 F.2d 1289, 1293 (4th Cir. 1987). In evaluating the sufficiency of the evidence, this court does not review the credibility of the witnesses and assumes that the finder of fact resolved all contradictions in the testimony in favor of the government. *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998).

To secure a conviction under 18 U.S.C. § 3146(a)(1), the government must prove that the defendant: (1) was released on conditions; (2) was required to appear before a court; and (3) knowingly failed to appear. *United States v. Smith*, 548 F.2d 545, 548 (4th Cir. 1977) (former 18 U.S.C. § 3150, predecessor to 18 U.S.C. § 3146); *see also*

*United States v. Fisher*, 137 F.3d 1158, 1162 (9th Cir. 1998); *United States v. Stewart*, 104 F.3d 1377, 1385 (D.C. Cir. 1997).[6]

A

Perry argues that he was not "released" on conditions because he was on home confinement and only permitted to attend court, consult with counsel, and contact his pretrial services officer. According to Perry, when he was placed on home confinement, he remained in constructive custody of the government. This argument is without merit.

Section 3146 provides that "[w]hoever, having been released under this chapter knowingly" fails to appear is guilty of an offense. 18 U.S.C. § 3146(a)(1). Perry was released under 18 U.S.C. § 3142, which is in the same chapter as 18 U.S.C. § 3146. Section 3142 provides that a defendant's release may be subject to a number of conditions, including—as was the case for Perry—that he be released to a third-party custodian, 18 U.S.C. § 3142(c)(1)(B)(i); that his personal associations and place of abode be restricted, 18 U.S.C. § 3142(c)(1)(B)(iv); and that he be required to report to the pretrial services agency, 18 U.S.C. § 3142(c)(1)(B)(vi).

In this case, it is clear that Perry was "released" on conditions set forth in 18 U.S.C. § 3142 and did not remain in the custody of the government when he was placed on home confinement. Accordingly, Perry's argument that he was in constructive custody of the government when he was placed on home confinement must be rejected.

---

[6]Section 3146 provides in part that:

(a)  *Offense*.—Whoever, having been released under this chapter knowingly—

(1)  fails to appear before a court as required by the conditions of release; or

(2)  fails to surrender for service of sentence pursuant to a court order;

shall be punished as provided in subsection (b) of this section.

B

Perry also argues that, at the time he failed to appear for trial, he was not "released" on conditions because a warrant for his arrest had been issued on March 5, 1999. In support of his position, Perry relies on *United States v. Castaldo*, 636 F.2d 1169 (9th Cir. 1980).

In *Castaldo*, the court considered the appeal of a defendant convicted of failing to appear under a predecessor of 18 U.S.C. § 3146, former 18 U.S.C. § 3150. *Castaldo*, 636 F.2d at 1170. After the defendant failed to appear at a bail revocation hearing, the district court ordered his bail forfeited and issued a warrant for his arrest. *Id.* The district court then ordered the defendant to appear at another hearing, but the defendant failed to appear. *Id.* The defendant was convicted of failing to appear for the second, rather than the first, hearing. *Id.*

On appeal, the defendant argued that, once the district court issued a warrant for his arrest and forfeited his bail, he was no longer released within the meaning of the statute. *Id.* at 1171. The *Castaldo* court agreed with the defendant's argument, holding that when he failed to appear for his second hearing he was a "fugitive," and, therefore, he could not be prosecuted for failing to appear. *Id.* at 1171-72.

We believe that *Castaldo* does not compel the conclusion that Perry was no longer "released" after the district court issued a bench warrant for his arrest on March 5, 1999. First, in *Castaldo*, when the district court ordered the defendant to appear in court for the second hearing, he had absconded and was already a fugitive. The *Castaldo* court's reversal of the failure to appear conviction recognized the anomaly presented by such a situation: the defendant had already forfeited his bail and exposed himself to criminal charges by missing his first hearing, and the district court had already issued an arrest warrant based on his failure to appear. *Id.* at 1171. According to the *Castaldo* court, it made no sense to invoke the failure to appear statute again when the defendant missed subsequent court-ordered appearances. *Id.* Indeed, the Ninth Circuit reads "*Castaldo* to hold under § 3150 that defendants who jump bail can be convicted for bail jumping based only on their *first* failure to appear." *United States v. Ellis*, 241 F.3d 1096, 1101 (9th Cir. 2001). According to the court in *Ellis*,

under *Castaldo*, "the government cannot pile criminal charges upon a fleeing defendant by repeatedly ordering appearances at hearings and then prosecuting the repeated failures to appear." *Ellis*, 241 F.3d at 1101.[7] In this case, unlike *Castaldo*, Perry was convicted for his first failure to appear in court, which was the March 16, 1999 trial.

Second, after *Castaldo* was decided, Congress clarified the procedures for terminating release status. In 1984, Congress enacted 18 U.S.C. § 3148, which allows a judicial officer to "issue a warrant for the arrest" of a released defendant to secure his presence for a release revocation hearing.[8] Thus, 18 U.S.C. § 3148 clearly contemplates that

---

[7]The Ninth Circuit's reading of *Castaldo* in *Ellis* resolves *Castaldo*'s tension with the Seventh Circuit's decision in *Milhem v. United States*, 834 F.2d 118 (7th Cir. 1987). In *Milhem*, the court held that the simple issuance of an arrest warrant, without more, does not extinguish the effect of the failure to appear statute. *Id.* at 122-23. In other words, a person remains released even after a warrant for his arrest issues. The Seventh Circuit specifically distinguished *Castaldo* on the ground that the defendant's bail in *Castaldo* was forfeited at the time the warrant for his arrest was issued, whereas the defendant's bail in *Milhem* was not. *Id.* at 121-22.

[8]Section 3148 provides in relevant part:

A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer . . . for a proceeding in accordance with this section. . . . The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—

(1) finds that there is—

(A)    probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

(B)    clear and convincing evidence that the person has violated any other condition of release; and

(2)    finds that—

(A)    based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

(B)    the person is unlikely to abide by any condition or combination of conditions of release.

the issuance a warrant is an event distinct from the revocation of release.

C

Perry also argues that, because his March 16, 1999 trial date was continued prior to that date, he did not fail to appear for a court appearance. This argument has no merit.

The district court did not continue Perry's trial date. Rather, on March 19, 1999, the district court indicated that a trial date would be set when Perry was returned to the Eastern District of Virginia. Thus, up until March 19, 1999, Perry's scheduled trial remained March 16, 1999, and, thus, Perry failed to appear for trial on March 16, 1999.

In support of his argument, Perry relies on *Fisher*. In *Fisher*, Fisher was convicted of, among other things, failing to appear in violation of 18 U.S.C. § 3146(a)(1). *Fisher*, 137 F.3d at 1161. Fisher's indictment charged him with failing to appear "'for pretrial motions and trial' from on or about May 31, 1995 until June 28, 1995." *Id.* at 1162. When Fisher was released after his initial arrest, one of the conditions of his release was that he "'appear at all proceedings as required.'" *Id.* Fisher's trial date was scheduled for May 31, 1995. Other conditions of his release required him to maintain contact with pretrial services, to submit to drug testing, and not to change his residence or employment without prior approval of a pretrial services officer. *Id.* Fisher violated all three of the latter conditions and his pretrial services officer was unable to locate him. A warrant for his arrest was accordingly issued on May 25, 1995. *Id.*

In the meantime, however, on May 16, 1995, Fisher's counsel moved for a continuance because he needed more time to investigate the case and prepare for a trial. The district court granted the motion on May 22, 1995 and set a new trial date of June 27, 1995. *Id.*

On June 8, 1995, the district court set a hearing on pretrial motions for June 16, 1995. When Fisher did not appear at that hearing, the district court vacated the June 27, 1995 trial date. *Id.*

On appeal, the Ninth Circuit vacated Fisher's 18 U.S.C. § 3146(a)(1) conviction. With respect to the May 31, 1995 trial date, the court reasoned that Fisher could not be convicted of failing to appear for trial "as required" on May 31, 1995 when the trial had been continued on May 22, 1995. *Id.* With respect to the June 16, 1995 pre-trial motions hearing, the court concluded that Fisher was not required to appear because the district court's minute order setting the June 16, 1995 hearing date did not require Fisher to attend. *Id.* at 1162-63. With respect to the June 27, 1995 trial date, the court concluded that, because the June 27, 1995 trial date had been vacated on June 16, 1995, there was to be no trial at which Fisher was required to appear. *Id.* at 1163. In other words, the order vacating the trial date relieved Fisher of a duty to appear on that date, "just as it relieved witnesses, juries and attorneys from their duty to appear." *Id.*

In our view, *Fisher* is not particularly relevant to this case. Unlike *Fisher*, there was no postponement of the trial date prior to the date of the scheduled trial. Rather, the March 16, 1999 trial date came and went, and it was not until March 19, 1999 that the district court indicated that a new trial date would be set once Perry was returned to the Eastern District of Virginia. Thus, Perry was "required" to appear at the March 16, 1999 trial.

D

Perry contends that the district court erred in determining that he had not established the affirmative defense of "uncontrollable circumstances." Pursuant to 18 U.S.C. § 3146(c):

> It is an affirmative defense to a prosecution under this section that uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender, and that the person appeared or surrendered as soon as such circumstances ceased to exist.

18 U.S.C. § 3146(c). According to Perry, because he was in the custody of the United States Marshal's Service on March 16, 1999, he was unable to appear in court as required. As Perry's argument goes,

his being in the custody of the United States Marshal's Service was a circumstance beyond his control and, therefore, constitutes an uncontrollable circumstance within the meaning of 18 U.S.C. § 3146(c).

The term "uncontrollable circumstances" is not defined in the statute. The legislative history of 18 U.S.C. § 3146(c) reveals that "the defense should apply where, for example, a person is recuperating from a heart attack and to leave his bed would imperil his life, or, after he had made careful plans for transportation to the court house, his vehicle breaks down or unexpected weather conditions bring traffic to a halt." S. Rep. No. 98-225 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3215.

In *United States v. Springer*, 51 F.3d 861 (9th Cir. 1995), the court noted that the language of 18 U.S.C. § 3146(c), "on its face, exudes a concern that something will actually prevent a person from surrendering." *Springer*, 51 F.3d at 866. According to the *Springer* court, "'uncontrollable'" is something "that cannot be managed, something that is ungovernable," and the "very idea of 'prevent' is something that forestalls, frustrates or deprives one of the power of acting." *Id.*

We will assume, for the sake of argument, that Perry's being in the custody of the United States Marshal's Service constitutes an uncontrollable circumstance. Such an assumption is of no help to Perry.

Section 3146(c) requires proof that the defendant did not contribute to the creation of the uncontrollable circumstance "in reckless disregard of the requirement to appear." 18 U.S.C. § 3146(c). However, Perry's flight did exactly that—he recklessly contributed to his failure to appear in court when he traveled to North Carolina in violation of the conditions of his release. Accordingly, the district court correctly rejected Perry's 18 U.S.C. § 3146(c) affirmative defense.

V

Finally, Perry argues that the district court erred in ordering that the sentence imposed for his failure to appear conviction run consecutive to the sentence imposed for operating a motor vehicle while classified

as an habitual offender. According to Perry, the district court should have run the sentence on the failure to appear conviction concurrent to the sentence imposed for operating a motor vehicle while classified as an habitual offender.

We reject Perry's argument. Section 3146(b)(2) states that a "term of imprisonment imposed under this section shall be consecutive to the sentence of imprisonment for any other offense." 18 U.S.C. § 3146(b)(2). In sentencing Perry on the failure to appear conviction, the district court followed this explicit command. Accordingly, the district court properly ordered that Perry's twenty-one month sentence for failing to appear run consecutive to his two-year sentence for operating a motor vehicle while classified as an habitual offender.

## VI

For the reasons stated herein, the judgments of the district court are affirmed.

*AFFIRMED*